**Cassundra TILLMAN, Plaintiff**

**v.**

**DISTRICT OF COLUMBIA, Defendant**

**Civil Action No. 14–1542 (CKK)**

United States District Court, District of Columbia.

Signed August 24, 2015

were allowed 14 days to file objections to the recommendations made by the magistrate judge. No objections have been filed as of this date. Upon careful consideration of the record in this case and of Magistrate Judge Harvey's [21] Report and Recommendation, the Court ADOPTS and ACCEPTS the Report and Recommendation in full. The Court GRANTS IN PART and DENIES IN PART both Plaintiff's [10] Motion for Summary Judgment and Defendant's [12] Cross–Motion for Summary Judgment.

Plaintiff is awarded total fees and costs of $38,353.31 as calculated at page 25 of Magistrate Judge Harvey's Report and Recommendation. Defendant shall make this payment to Plaintiff no later than October 1, 2015.

This Court dismisses this case in its entirety.

An appropriate Order accompanies this Memorandum Opinion.

Robert Wilson Jones, James E. Brown & Associates, PLLC, Washington, DC, for Plaintiff.

Tasha Monique Hardy, Office of Attorney General/DC, Washington, DC, for Defendant.

## MEMORANDUM OPINION

COLLEEN KOLLAR–KOTELLY, United States District Judge

On July 29, 2015, the Magistrate Judge G. Michael Harvey's Report and Recommendation was entered, and the parties

## REPORT AND RECOMMENDATION

G. MICHAEL HARVEY, UNITED STATES MAGISTRATE JUDGE

This is an action for attorney's fees brought pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 et seq. Complaint ("Compl.") [Dkt. 1] at ¶ 1. On February 19, 2015, this case was referred to the undersigned for full case management and for a report and recommendation on the parties' cross motions for summary judgment [Dkts. 10 and 12][1] concerning plain-

1. The briefs related to the parties' cross motions for summary judgment are as follows: Plaintiffs' Motion for Summary Judgment ("Pl.'s Mot.") [Dkt. 10]; Defendant's Cross Motion for Summary Judgment and Opposition to Plaintiffs' Motion for Summary Judgment ("Def.'s Opp.") [Dkt. 13]; Plaintiffs' Opposition to Defendant's Cross Motion for Summary Judgment and Reply to Defendant's Opposition to Plaintiffs' Motion for Summary Judgment ("Pl.'s Opp.") [Dkt. 14]; Defendant's Reply to Plaintiffs' Opposition to its Cross Motion for Summary Judgment ("Def.'s Reply") [Dkt. 16]; Plaintiffs' Supplemental Memorandum ("Pl.'s Supp. Memo.") [Dkt. 18]; and Defendant's Supplemental Memorandum in Opposition to Plaintiffs' Supplemental Brief ("Def.'s Supp. Memo.") [Dkt. 20].

tiffs' counsel's request for reimbursement of their attorney's fees. Plaintiffs' counsel's motion seeks a total of $49,542.49 in fees arising from an administrative proceeding challenging whether the District of Columbia provided their client, a minor child, with a free appropriate public education ("FAPE") as required by the IDEA. For the reasons stated below, the undersigned recommends that the parties' cross motions for summary judgment be **GRANTED IN PART** and **DENIED IN PART**.

## I. FACTUAL BACKGROUND

### A. K.C.'s Public Education

Plaintiff K.C. is a minor child living in the District of Columbia who has been deemed eligible to receive special education and related services from the District of Columbia. Compl. at ¶ 6. In general, the IDEA guarantees all children with disabilities a FAPE. 20 U.S.C. § 1400(d)(1)(A). Plaintiff Cassundra Tillman is K.C.'s grandmother.[2] Compl. at ¶ 7.

The defendant is the District of Columbia, which operates the District of Columbia Public Schools ("DCPS"). *Id.* at ¶ 3. Because the District receives funds pursuant to the IDEA to ensure access to FAPE, it is obliged to comply with applicable federal regulations and statutes, including the IDEA. *See* 20 U.S.C. § 1411.

In February of 2012, K.C. enrolled in Smothers Elementary School, a public school in the District of Columbia. HOD at ¶ 3. Between February 2012 and May of 2014, K.C. engaged in defiant behavior, verbal aggression, bullying, illegal activity, and was suspended from school on several occasions for reckless behavior and fighting. *Id.* at ¶¶ 8, 11. On one occasion, K.C.

brought explosives to school. *Id.* at ¶ 15. During this period, four Individualized Education Program ("IEP") Teams met to assess how best to address K.C.'s behavioral issues and to treat K.C.'s learning disabilities. *Id.* at ¶¶ 4–19.

The IEP Team is the mechanism through which a FAPE is delivered to disabled students. The IEP Team is required to review the IEP periodically, but not less than annually, to determine whether the annual goals for the child are being achieved, and to revise the IEP goals as appropriate to address, *inter alia,* any lack of expected progress toward meeting them. *See* 34 C.F.R. § 300.324(b)(1)(i) & (ii).

K.C.'s first IEP Team met on May 10, 2012. HOD at ¶ 4. The IEP Team concluded that K.C. had a specific learning disability and had exhibited "oppositional defiant behaviors" and "aggressive and bullying behaviors" in school. *Id.* The IEP Team developed emotional and academic goals for K.C. *Id.* It concluded that K.C. required five hours per week of specialized instruction, and two hours per month of behavior support services, both outside of the general education setting. *Id.*

K.C. enrolled in Kelly Miller Middle School for the 2012–2013 academic year. *Id.* at ¶ 5. In October 2012, school officials conducted a Functional Behavioral Assessment ("FBA") of K.C. *Id.* The evaluator noted that K.C. exhibited "defiance, noncompliance, verbal aggression, bullying, depression, ... [and engaged in] illegal activity." *Id.* It was also noted that K.C. was "off task, withdraw[n], distract[ed] others, ... and [sought] attention." *Id.* The evaluator concluded that K.C.'s behavior affected his academic achievement and

---

**2.** The Complaint suggests that K.C. is Ms. Tillman's child. Compl. at ¶ 1. The text of the Hearing Officer's Determination states,

however, that Ms. Tillman's is K.C.'s grandmother. Hearing Officer's Determination ("HOD") [Dkt. 1–2] at 1.

functional performance, and developed strategies to address K.C.'s behavior. *Id.*

To further address these issues, K.C. was enrolled in the Behavior Education System program at Hart Middle School at the beginning of the 2013–2014 school year. *Id.* at ¶ 7. K.C. was placed in a class with a nine to one student to staff ratio and had access to a special education teacher and two teacher aides. *Id.* The program was also supported by a full time social worker, who provided counseling services and crisis intervention. *Id.* Nevertheless, K.C. was suspended on two occasions while enrolled in the program, once for reckless behavior and once for fighting. *Id.* at ¶ 8.

On December 16, 2013,[3] K.C's IEP Team met for a second time. *Id.* at ¶ 9. The IEP Team concluded that K.C. had an emotional disturbance that was affecting his ability to be successful in a general education setting. *Id.* In order to prevent his removal from that setting, the IEP Team recommended that K.C. receive 26.5 hours of specialized instruction per week, and 120 minutes of behavioral support services per month, both outside the general education setting. *Id.*

On February 27, 2014, K.C. received a psychoeducational assessment. *Id.* at ¶ 11. Following an examination of K.C., the evaluator recommended that K.C. "be placed in a psychiatric residential treatment program and a school with a therapeutic environment equipped to work with youth who experience severe emotional disorders." *Id.*

On April 23, 2014, K.C's IEP Team met for a third time. *Id.* at ¶ 12. It noted that K.C. continued to behave inappropriately in school and concluded that his FBA and Behavior Intervention Plan ("BIP") needed to be updated. *Id.* at ¶ 12.

On May 1, 2014, K.C.'s IEP Team met for a fourth time. *Id.* at ¶ 13. It observed that K.C.'s behavior continued to affect his educational performance, that K.C. neither responded to the BIP in place nor any other incentives, and that K.C. did not care whether he failed seventh grade. *Id.* The IEP Team did not update K.C.'s goals but it did revise his BIP and recommend that he continue to receive 26.5 hours of specialized instruction per week, and 120 minutes of behavioral support services per month, both outside the general education setting. *Id.* Nevertheless, in May of 2014, K.C. continued to exhibit extremely erratic and disruptive behavior, including bringing explosives to school. *Id.* at ¶ 15.

**B. Plaintiffs' Administrative Due Process Complaint**

If a parent is dissatisfied with an IEP developed for his or her child, the parent has a right to a due process hearing conducted by the state or local education agency before an impartial hearing officer. *See* 20 U.S.C. § 1415(f)(1), (3). On May 27, 2014, plaintiffs filed such an administrative due process complaint with DCPS. Compl., Exh. 1 at 1 ("Admin.Compl."). Plaintiffs alleged that DCPS denied K.C. a FAPE when it: (1) failed to review annually the May 10, 2012, IEP to determine whether K.C.'s goals were being achieved and to address any lack of expected progress toward those goals; (2) failed to provide K.C. sufficient specialized instruction in a therapeutic setting in the December 16, 2013, IEP; and (3) failed to provide K.C. specialized instruction in a special education therapeutic day school in the May 1, 2014, IEP. *Id.* at 6–9. Plaintiffs

---

**3.** The Hearing Officer identifies the date of K.C.'s second IEP meeting as December 16, 2014. HOD at ¶ 9. Given the chronological nature of the Hearing Officer's narrative in the HOD, the Court believes the IEP meeting occurred on December 16, 2013.

requested as relief, *inter alia*, that DCPS: (1) find that DCPS denied K.C. a FAPE; (2) place K.C. into a therapeutic environment; (3) specifically fund K.C's placement at Accotink Academy, a private, therapeutic special education day school in Springfield, Virginia; and (4) provide K.C. appropriate compensatory education for the time that K.C.'s IEP did not provide the necessary specialized instruction outside the general education setting. *Id.* at 9–11.

### C. The HOD

The due process hearing on plaintiffs' administrative complaint was held on July 17, 2014. HOD at 1. At the hearing, the Hearing Officer heard from six witnesses for plaintiffs: Cassundra Tillman; a special education tutor; an expert in school psychology; an education advocate; K.C.'s Probation Officer; and a family therapist. *Id.* at 2, 13. The Hearing Officer also heard from one DCPS witness, an assistant principal at one of K.C's schools. *Id.* Thirty-two exhibits were admitted at the hearing on behalf of plaintiffs. *Id.* at 2–3. None were admitted on behalf of DCPS. *Id.*

In the HOD, the Hearing Officer defined the sole issue before him as follows:

Whether DCPS denied the Student a FAPE by failing to propose or provide an IEP or placement that was reasonably calculated to enable the student to make progress in the general education curriculum because the IEPs developed on or about December 16, 2013 and May 1, 2014, failed to provide the specialized instruction and related services in a separate special education therapeutic day school in light of the student's lack of educational progress and ongoing behavior problems....

*Id.* at 3. Following the hearing, the Hearing Officer concluded that K.C. had not received a FAPE because, although K.C.

had been placed in a special class within a general education setting, K.C.'s disruptive behavior ultimately prevented K.C. from obtaining a free appropriate public education. *Id.* at 9. As relief, the Hearing Officer ordered DCPS, inter alia, to place K.C. in a special education school for the 2014–2015 school year, to be funded by DCPS if nonpublic, and to provide K.C., at DCPS' expense, with compensatory education, namely, 40 weeks (at 6 hours per week) of independent tutoring services in reading, writing and mathematics, and 30 weeks (at 2 hours per week) of independent mentoring services. *Id.* at 11–12.

## II. LEGAL STANDARD

### A. Summary Judgment on an IDEA Claim

The IDEA authorizes a court to award fees "in its discretion and to base the award on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." *Parks v. District of Columbia*, 895 F.Supp.2d 124, 129 (D.D.C. 2012) (citation and internal quotations omitted). A party moving for summary judgment on legal fees must demonstrate prevailing party status and the reasonableness of the fees requested in terms of hours spent on the matter and hourly rate. *Id.* Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted "if the movant shows that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "A fact is material if it 'might affect the outcome of the suit under the governing law' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury

could return a verdict for a nonmoving party.'" *Steele v. Schafer,* 535 F.3d 689, 692 (D.C.Cir.2008) (*quoting Anderson,* 477 U.S. at 248, 106 S.Ct. 2505).

Summary judgment should be granted against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. The court is required to draw all justifiable inferences in the nonmoving party's favor and to accept the nonmoving party's evidence as true. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. To avoid summary judgment, the nonmoving party must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252, 106 S.Ct. 2505. The non-moving party cannot rely on allegations or conclusory statements; instead the non-moving party is obligated to present specific facts that would enable a reasonable jury to find in its favor. *Greene v. Dalton,* 164 F.3d 671, 675 (D.C.Cir.1999).

## B. Prevailing Party Status

■ The IDEA authorizes a court to award "in its discretion ... reasonable attorneys' fees as part of the costs ... to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B). Before awarding attorney's fees, the court must initially determine whether the party seeking fees is a prevailing party. *Jackson v. District of Columbia,* 696 F.Supp.2d 97, 101 (D.D.C. 2010); *see also District of Columbia v. West,* 699 F.Supp.2d 273, 278 (D.D.C.2010) (in considering a claim for IDEA attorney's fees, it is the court, "not the hearing officer in the administrative proceeding, which determines prevailing party status"). A prevailing party is commonly understood to mean "one who has been awarded some relief by the court." *Buckhannon Bd. & Care Home, Inc. v. W. Va.*

*Dep't of Health and Human Res.,* 532 U.S. 598, 603, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). In the D.C. Circuit, in order for a party to be deemed a prevailing party, "(1) there must be a court-ordered change in the legal relationship of the parties; (2) the judgment must be in favor of the party seeking the fees; and (3) the judicial pronouncement must be accompanied by judicial relief." *Green Aviation Mgmt. Co., LLC v. FAA,* 676 F.3d 200, 203 (D.C.Cir. 2012) (internal citations and quotations omitted). The prevailing party test applies generally to federal fee shifting statutes, and has been held to apply specifically to the IDEA. *Robinson v. District of Columbia,* 61 F.Supp.3d 54, 59 (D.D.C. 2014) (*citing District of Columbia v. Straus,* 590 F.3d 898, 901 (D.C.Cir.2010)).

## C. Establishing a Reasonable Fee

■ Once the prevailing party test has been satisfied, the party seeking attorney's fees has the burden of establishing the reasonableness of the fee request. *See In re North,* 59 F.3d 184, 189 (D.C.Cir. 1995). With respect to assessing the reasonableness of the fees sought, the Supreme Court has held that courts should focus on "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate" in order to arrive at the total or "lodestar" amount. *Blackman v. District of Columbia,* 397 F.Supp.2d 12, 14 (D.D.C.2005) (*citing Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). The party seeking fees has "the burden of demonstrating that the number of hours expended on particular tasks was reasonable." *Holbrook v. District of Columbia,* 305 F.Supp.2d 41, 45 (D.D.C.2004) (internal citations omitted). This burden is satisfied by "submitting an invoice that is sufficiently detailed to 'permit the District Court to make an independent determination whether or not the hours claimed are

justified.' " *Id.* (quoting *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.,* 675 F.2d 1319, 1327 (D.C.Cir.1982)).

The IDEA requires that fees awarded under the statute "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C). The party seeking fees has the burden of demonstrating the reasonableness of the rates sought. *Covington v. District of Columbia,* 57 F.3d 1101, 1107 (D.C.Cir.1995); *see also Blum v. Stenson,* 465 U.S. 886, 896 n.11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *Hensley,* 461 U.S. at 437, 103 S.Ct. 1933. That burden is satisfied through the "showing of at least three elements: the attorneys' billing practices; the attorneys' skill, experience, and reputation; and the prevailing market rates in the relevant community." *Covington,* 57 F.3d at 1107; *see also Blum,* 465 U.S. at 896 n.11, 104 S.Ct. 1541; *Save Our Cumberland Mountains, Inc. v. Hodel,* 857 F.2d 1516, 1524 (D.C.Cir.1988). The determination of a " 'market rate' for the services of a lawyer is inherently difficult" and is decided by the court in its discretion." *Blum,* 465 U.S. at 896 n.11, 104 S.Ct. 1541. To inform and assist the court in the exercise of its discretion, "the burden is on the fee applicant to produce satisfactory evidence ... that the requested [hourly] rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* An attorney's usual billing rate may be considered the "reasonable rate" if it accords with the rates prevailing in the community for similar services by lawyers possessing similar skill, experience and reputation. *Kattan by Thomas v. District of Columbia,* 995 F.2d 274, 278 (D.C.Cir.1993) (*citing Blum,* 465 U.S. at 896 n.11, 104 S.Ct. 1541).

Once the party seeking fees has met this burden, "there is a presumption that the number of hours billed and the hourly rates are reasonable." *Blackman v. District of Columbia,* 677 F.Supp.2d 169, 172 (D.D.C.2010). The burden then shifts to the party opposing the fee request to rebut the moving party's showing. *Id.*

## III. DISCUSSION

### A. Plaintiffs Were Prevailing Parties

Defendant does not contest plaintiffs' status as prevailing parties in the underlying administrative matter. *See generally* Def.'s Opp.[4] The Court therefore need not consider the issue further. *See Jay v. District of Columbia,* 75 F.Supp.3d 214, 217–218(D.D.C.2014). Nevertheless, the Court observes that the government's concession is well-taken. Plaintiffs received all, or nearly all, of the relief they sought in their administrative due process complaint, including: (1) a determination that K.C. had been denied a FAPE; (2) K.C.'s placement in a therapeutic special education day school with a licensed social worker, psychiatrist, and psychologist; and (3) the award of compensatory education in the form of tutoring and counseling services. *Compare* Admin. Compl. at 9–10, *with* HOD at 10–12. Plaintiffs also sought K.C.'s specific, funded placement at Accotink Academy. Admin. Compl. at 9. While the Hearing Officer did not direct K.C.'s placement at Accotink, his order did

---

4. In its opposition to plaintiffs' motion for summary judgment, defendant states "Plaintiffs cannot make the required showing of prevailing party status for purposes of an award of attorneys' fees, and summary judgment should be granted to the Defendant."

Def.'s Opp. at 2. At the July 7, 2015, hearing on plaintiffs' motion, counsel for defendant stated that the above-quoted statement was a typographical error, and that the defendant did not contest that plaintiffs were prevailing parties in this matter.

instruct DCPS to consider K.C.'s placement in a private day school if the IEP Team determined that no DCPS schools or public charter schools were deemed appropriate for K.C.'s needs. HOD at 11. The Hearing Officer also ordered that, in the event a non-public school were selected for K.C., the cost of tuition and transportation to the school would be covered by DCPS. *Id.*

Accordingly, by any measure, plaintiffs have satisfied the three-part test articulated in *Green Aviation.* There was a court-ordered change in the legal relationship between plaintiffs and defendant, the HOD was in favor of plaintiffs, and the HOD awarded plaintiffs all, or nearly all, of the relief they sought in the administrative proceeding. Accordingly, the undersigned recommends that plaintiffs be found to be prevailing parties.

## B. Plaintiffs' Counsel are Entitled to Attorney's Fees Equal to Three–Quarters of the *Laffey* Rates

■ The next issue before the Court is whether the attorney's fees sought by plaintiffs' counsel are reasonable. In this case, plaintiffs' counsel seek three-quarters of the *Laffey* rates [5] for work performed by them or their paraprofessionals in the administrative proceeding. *See* Pl.'s Mot. at 8–9. Defendant does not object to awarding plaintiffs' counsel fees at three-quarters of the *Laffey* rate. *See* Def.'s Opp. at 2–3. Accordingly, the Court need not consider the issue further. *See Bell v. United Princeton Props., Inc.,* 884 F.2d

713, 719 (3d Cir.1989) (holding that a court may not *sua sponte* reduce the amount of a fee award when the adverse party has not raised any objections); *Holbrook,* 305 F.Supp.2d at 45 (addressing only the reasonableness of the hours sought by plaintiffs in their fee petition because defendant conceded that the rates sought were reasonable). Nevertheless, the Court agrees with plaintiffs' counsel's voluntary reduction of their rates. Three-quarters of the *Laffey* rates would more than adequately compensate them for their work in this matter. Indeed, where, as here, the issues are not complex—insofar as there is no pre-hearing discovery, few if any motions, and no lengthy argument or hearing—a number of judges of this Court have awarded three-quarters of the applicable *Laffey* rate in IDEA cases. *See Brighthaupt v. District of Columbia,* 36 F.Supp.3d 1, 4–5 (D.D.C.2014) (awarding three-quarters of the *Laffey* rates because none of the three cases involved issues that were complex but instead proceeded in a "fairly routine fashion"); *McAllister,* 21 F.Supp.3d at 110 (awarding three-quarters of the *Laffey* rates because the hearings at issue lacked complexity, there were few or no witnesses, and limited contested issues); *Wright v. District of Columbia,* Civ. Act. No. 11–384, 2012 WL 79015, at *4 (D.D.C. Jan. 11, 2012) (awarding three-quarters of the Laffey rates because the matter involved a one-day, routine administrative hearing); *Rooths v. District of Columbia,* 802 F.Supp.2d 56, 62–63 (D.D.C.2011) (same).

---

5. In 1983, the U.S. Attorney's Office for the District of Columbia developed the *Laffey* Matrix as a means of identifying the prevailing hourly rates for attorneys practicing complex federal litigation. *See Laffey v. Nw. Airlines, Inc.,* 572 F.Supp. 354 (D.D.C.1983), *aff'd in part, rev'd in part on other grounds,* 746 F.2d 4 (1984), *cert. denied,* 472 U.S. 1021, 105 S.Ct. 3488, 87 L.Ed.2d 622 (1985). The rates are the presumed maximum rates appropriate for complex federal litigation. *McAllister v. District of Columbia,* 21 F.Supp.3d 94, 108 (D.D.C.2014). The U.S. Attorney's Office updates the *Laffey* Matrix annually to reflect increases in the local Consumer Price Index. The updated *Laffey* Matrix can be found at http://www.justice.gov/sites/default/files/usao-dc/legacy/2014/07/14/Laffey Matrix _2014–2015.pdf (last visited June 2, 2015).

Like in those cases, the administrative proceedings in this matter proceeded in a routine fashion. Plaintiffs' counsel filed a due process complaint, which was followed by a resolution session, a pre-hearing conference, and a due process hearing. HOD at 2. At the due process hearing, the Hearing Officer heard the testimony of only seven witnesses. *Id.* The entire proceeding took one day, and did not involve any post-hearing briefing. *Id.* Plaintiffs' counsel's voluntary reduction of their rates to three-quarters of the *Laffey* rate is thus in line with the decisions of this Court. Accordingly, the undersigned recommends that plaintiffs' attorneys and paraprofessionals be reimbursed at three-quarters of the applicable *Laffey* rate. Specifically, the Court recommends the follow rates for each of plaintiffs' attorneys or paraprofessionals based on the length of their legal experience:[6]

### 1. *Attorney Adry Polo*

Mr. Polo graduated from St. Thomas School of Law in 2007, and has been practicing law at least since June of 2008. *See* Verified Statement of Adry Polo [Dkt. 10–2] at ¶¶ 3, 6–14. The Court therefore recommends the following rate of reimbursement for Mr. Polo's work:

| Date Range of Services | Years of Experience | ¾ Laffey Rate |
| --- | --- | --- |
| June 1, 2013 – May 31, 2014 | 5 (4-7 year range on Laffey Matrix) | $221.25 |
| June 1, 2014 – May 31, 2015 | 6 (4-7 year range on Laffey Matrix) | $225 |

### 2. *Attorney James E. Brown*

Mr. Brown graduated from Howard University Law School in 1969. *See* Verified Statement of James E. Brown [Dkt. 19–2] at ¶ 2. The Court therefore recommends the following rate of reimbursement for Mr. Brown's work:

| Date Range of Services[7] | Years of Experience | ¾ Laffey Rate |
| --- | --- | --- |
| June 1, 2013 – May 31, 2014 | 44 (20+ years on Laffey Matrix) | $382.50 |

[**Editor's Note:** The preceding image contains the reference for footnote [7]].

### 3. *Attorney Kiran Hassan*

At the July 7, 2015, hearing, Ms. Hassan represented to the Court that while she graduated from law school in June 2001, she did not start practicing law until May 2004. *See* Verified Statement of Kiran Hassan [Dkt. 10–2] at ¶ 13. The three-year gap between Ms. Hassan's graduation and the beginning of her legal career is material to the calculation of her *Laffey* rate. It is the difference between a rate of $270 or $337.50 for the hours she billed during the period between June 1, 2013 and May 31, 2014, and between a rate of $277.50 or $345 for the hours she billed during the period between June 1, 2014 and May 31, 2015. Plaintiffs argue that the Court should only consider Ms. Has-

---

6. In their motion for summary judgment, plaintiffs submitted a request for attorney's fees based on incorrect *Laffey* rates, *i.e.*, the rate for the period between June 2012 and May 2013, rather than between June 2013 and May 2014, and between June 2014 and May 2015, when the administrative proceedings at issue were pursued. At the June 7, 2015, hearing, the Court instructed plaintiffs to submit an updated request for fees based on three-quarters of the *Laffey* rate that was operative during the administrative proceed-

ings in this case. Plaintiffs submitted the corrected fee request on July 9, 2015. *See* Pl.'s Supp. Memo., Exh. 2, at 20. Inexplicably, some of the proposed rates in plaintiffs' supplemental submission were also not correct. The rates in the tables above reflect the correct three-quarters *Laffey* rates.

7. Only one date range applies for Mr. Brown because he did not perform any work on plaintiffs' case after March 15, 2014. *See* Pl.'s Supp. Memo., Exh. 2, at 5.

san's date of graduation in determining her experience and hourly rate under the *Laffey* Matrix. Pl.'s Opp. at 3. The defendant counters that it is the length of her legal experience that should matter when setting her *Laffey* rate. Def.'s Reply at 1–2.

The defendant is correct. When there is a significant gap between the date an attorney graduated from law school and when he or she actually began practicing law, it is the latter date that should control in setting his or her *Laffey* rate. It is the intent of the *Laffey* Matrix to provide the prevailing hourly rates for attorneys of comparable years of legal experience. A law degree is not the equivalent of prac-tical legal experience. Further, using only an individual's date of graduation from law school as the means of determining the appropriate *Laffey* rate would lead to highly questionable results where, as here, there is a significant gap between when an attorney graduated from law school and when he or she actually began his or her legal career. Should an attorney who graduated from law school 20 years ago, but who only began practicing law last year, be paid at the top *Laffey* rate? Clearly not. Accordingly, the Court recommends that Ms. Hassan's three-quarters *Laffey* rate be based on the date that she actually began practicing law, *i.e.*, May 2004:

| Date Range of Services | Years of Experience | ¾ Laffey Rate |
| --- | --- | --- |
| June 1, 2013 – May 31, 2014 | 9 (8-10 year range on Laffey Matrix) | $270 |
| June 1, 2014 – May 31, 2015 | 10 (8-10 year range on Laffey Matrix) | $277.50 |

#### 4. *Attorney Robert Jones*

Mr. Jones graduated from the Georgetown University Law Center in May 2009, and has been practicing law since that time. *See* Verified Statement of Robert W. Jones [Dkt. 10–2] at ¶¶ 3, 10–11. The Court therefore recommends the following rate of reimbursement for Mr. Jones' work:

| Date Range of Services[8] | Years of Experience | ¾ Laffey Rate |
| --- | --- | --- |
| June 1, 2013 – May 31, 2014 | 4 (4-7 year range on Laffey Matrix) | $221.25 |

#### 5. *Paralegal Dorren Athey and Legal Assistant Antonio Teel*

In accordance with the appropriate *Laffey* Matrix, the Court recommends that both of plaintiffs' counsel's paraprofessionals be reimbursed at an hourly rate of $108.75 (three-quarters of $145) for work performed from June 1, 2013 to May 31, 2014, and $112.50 (three-quarters of $150) for work performed from June 1, 2014 to May 31, 2015.

### C. Plaintiffs' Counsel are Not Entitled to Reimbursement for Certain Tasks

Defendant does not argue that plaintiffs' counsel's overall fee award should be reduced for partial success at the administrative hearing. Instead, defendant seeks to exclude certain fees billed by plaintiffs' counsel for work they performed related to K.C.'s juvenile court proceedings that occurred during the underlying IDEA administrative proceeding. *See* Def.'s Opp. at 3–6. Further, when independently reviewing plaintiffs' counsel's hours, the Court identified what appear to be charges

for IEP-related work that would be prohibited by section 1415(i)(3)(D)(ii) of the IDEA. *See* 20 U.S.C. § 1415(i)(3)(D)(ii). As neither party had briefed the IEP issue, the Court invited supplemental briefing at the July 7, 2015, hearing. Both parties submitted supplemental briefs following the hearing. *See* Pl.'s Supp. Memo. [Dkt. 18]; Def.'s Supp. Memo. [Dkt. 20]. The Court will address the IEP- and juvenile court-related fees in turn below.

### 1. *Fees Related to IEP Team Meetings*

■ Plaintiffs seek reimbursement for time spent by their counsel on work relating to K.C.'s IEP Team meetings. *See* Pl.'s Supp. Memo. at 1–2. Section 1415(i)(3)(D)(ii) of the IDEA, however, directs that "[a]ttorneys' fees may not be awarded relating to any meeting of the IEP Team unless such meeting is convened as a result of an administrative proceeding or judicial action, or, at the discretion of the State, for a mediation described in subsection (e)." [9] *See* 20 U.S.C. § 1415(i)(3)(D)(ii). Counsel for plaintiffs agreed during the July 7, 2015, hearing, that none of K.C.'s four IEP Team meetings were convened as a result of an administrative proceeding or judicial action, or for the purpose of mediation. Nevertheless, while they do not invoice the defendant for attendance at any of K.C.'s IEP Team meetings, plaintiffs' counsel do seek payment for time incurred "relating to" those meetings, including time spent preparing for, and scheduling, the team meetings. This Court has repeatedly found, however, that legal services for such IEP-related purposes are not compensable under the IDEA. *See A.S. v. District of Columbia*, 842 F.Supp.2d 40, 47 (D.D.C. 2012) (holding that the IDEA prohibits reimbursement of attorney's fees for time spent preparing for, traveling to, and attending an IEP meeting); *Friendship Edison Public Charter Sch. Collegiate Campus v. Nesbitt*, 752 F.Supp.2d 1, 9 (D.D.C. 2010) (disallowing reimbursement for 27 entries related to IEP meetings because plaintiff failed to show why the meetings qualified for reimbursement under section 1415(i)(3)(D)(ii)); *A.C. v. District of Columbia*, 674 F.Supp.2d 149, 156 (D.D.C. 2009) (disallowing reimbursement for 111.5 hours for work related to IEP meetings because plaintiffs failed to show why the meetings qualified for reimbursement under section 1415(i)(3)(D)(ii)). Accordingly, consistent with that case law and the plain language of section 1415(i)(3)(D)(ii), the undersigned recommends that plaintiffs' counsel not be reimbursed for the following IEP-related fees:

| Date of Service | Attorney | Description of Legal Services | Hours Claimed | Recommended Hours Compensated |
|---|---|---|---|---|
| 12/12/13 | AP[10] | Prepared for the MDT/IEP meeting. Preparation time included a thorough review of all the assessments in the case, the case notes, discussion with the parent to understand her concerns and took into consideration the direction of the advocate to secure an appropriate education for this student. | 2.00 | 0 |
| 3/21/14 | AP | Reviewed email from Ms. Harrower, SEC at Hart proposing dates and times to | .33 | 0 |

---

9. Subsection (e) governs mediations of IDEA actions. *See* 20 U.S.C. § 1415(e).

| | | | | |
|---|---|---|---|---|
| | | convene an IEP meeting for the student. Need to discuss availability with the student's legal guardian. | | |
| 3/25/14 | AP | Reviewed emails from Ms. Harrower proposing dates and times to convene an MDT meeting for the student and responded. Pending confirmation from the student's legal guardian. | .33 | 0 |
| 3/27/14 | AP | Phone call to Ms. Tillman, student's legal guardian to confirm the student's IEP meeting scheduled for March 28, 2014 at 10am. She confirmed her participation. | .17 | 0 |
| 3/27/14 | AP | Composed an electronic correspondence to Ms. Harrower, LEA Representative at Hart Middle School confirming the legal guardian's participation in the IEP meeting scheduled for March 28, 2014 at 10am. | .17 | 0 |
| 3/27/14 | AP | Prep[a]red for the MDT/IEP meeting. Preparation time included but was not limited to: a thorough review of all the assessments, past IEPs, school records, and the case notes. | 1.5 | 0 |
| 3/28/14 | AP | Reviewed email from Ms. Harrower, SEC at Hart advising the special education teacher is ill and the Student's meeting will need to be rescheduled. | .17 | 0 |
| 4/4/14 | AP | Composed an electronic correspondence to Ms. Harrower, SEC at Hart MS requesting additional dates and times to convene the IEP meeting for the student during the week of April 7th. | .17 | 0 |
| 4/4/14 | KH | Reviewed emails regarding scheduling the next meeting and calendared the meeting. | .33 | 0 |
| 4/7/14 | AP | Composed an electronic correspondence to Ms. Harrower, SEC at Hart MS to follow up on available dates and times the school team can convene for the student's IEP meeting. | .17 | 0 |
| 4/8/14 | AP | Reviewed email from Ms. Harrower advising the team is available to convene the IEP meeting for the student on April 23, 2014 at 11am. and responded. | .67 | 0 |

| | | | | |
|---|---|---|---|---|
| | | Advised Kiran of same since I will be out for maternity purpose after that date. Also, notified the client of the new date. | | |
| 4/8/14 | KH | Reviewed email regarding upcoming meeting, checked the calendar and scheduled it. | .33 | 0 |
| 4/11/14 | KH | Drafted email to Mr. Marcus Jordan, the student's parole officer to advise the IEP meeting has been scheduled for April 23rd at 11am. | .17 | 0 |
| 4/11/14 | AP | Drafted email to Ms. Rhonda Pope, the student's independent counselor advising his next IEP meeting is scheduled for April 23rd at 11:00 a.m. | .17 | 0 |
| 4/21/14 | KH | Prep[a]red for the MDT/IEP meeting. Preparation time included but was not limited to: a thorough review of all the assessments, past IEPs, school records, and the case notes. | 2.50 | 0 |

Plaintiffs' counsel argue that a few of the entries in their fee invoice reflect time spent on a mix of tasks, some of which were IEP-related and some of which were not. *See* Pl.'s Supp. Memo. at 2. For these entries, unfortunately, plaintiffs' counsel did not—and, at this point, probably cannot—delineate how much time was spent on the non-IEP related tasks in each entry. *Id.* Because plaintiffs bear the burden of proof with regard to their fee request, *Holbrook*, 305 F.Supp.2d at 45, this Court would be within its discretion to deny any fees for these entries. Nevertheless, because it is clear for these entries that at least some of plaintiffs' counsel's time was spent on non-IEP related tasks, the undersigned recommends that counsel be reimbursed for half of the time that they seek in their petition for these entries. *See G.M. v. Saddleback Valley School District*, No. SACV 11–1449, 2012 WL 5947213, *8 (C.D.Cal. Nov. 26, 2012) (reducing by half the hours spent on tasks that were both IEP- and non IEP-related). The affected entries are as follows:

| Date of Service | Attorney | Description of Legal Services | Hours Claimed | Recommended Hours Compensated |
|---|---|---|---|---|
| 12/17/13 | AP | Conference with the advocate who attended the IEP meeting in my place. We discussed in details, the position of each participant in the meeting, each recommendation and attitude, exactly what the net result was from the meeting and our planned strategy to pursue any issue that we may have with the finished product (IEP) and how we plan to present this to the client. Reviewed the advocate's notes, the IEP notes, and the draft IEP. | .83 | .42 |
| 3/10/14 | AP | Reviewed email from Ms. Harrower at Hart MS advising the student is now enrolled in school today and responded requesting records and an IEP meeting per the guardian's request. | .33 | .17 |
| 4/8/14 | AP | Phone call from Ms. Tillman to confirm the student's IEP meeting for April 23rd at 11am and discuss the issues involved in the upcoming meeting. Answered her questions regarding the next steps in the student's case. | .33 | .17 |

Finally, the Court recommends that plaintiffs' counsel be compensated in full for two entries on their fee invoice, which, prior to the July 7, 2015, hearing, had appeared to the undersigned to be IEP-related. As plaintiffs' counsel clarified in their supplemental filing, the two entries—for Ms. Hassan's April 23, 2014, review of the April 2014 IEP Team meeting notes and for Mr. Polo's April 24, 2014, review of the December 2013 IEP Team meeting notes [11]—involved plaintiffs' attorneys reviewing the IEP Team meeting notes as part of the process of "building an [IDEA] complaint, independent of preparing for, attending, or advising clients about the IEP meeting itself." *See* Pl.'s Supp. Memo. at 2. Further, as plaintiffs point out, the IEP meeting notes in question were introduced as evidence at the due process hearing. *Id.* Accordingly, the undersigned recommends that the fees related to both reviews should be compensated in full as they were sufficiently related to the development of plaintiffs' administrative complaint to justify compensation.

### 2. Fees Related to K.C.'s Juvenile Court Proceedings

Defendant also objects to the reimbursement of plaintiffs' counsel for time they spent related to K.C.'s juvenile proceedings in D.C. Superior Court. Def.'s Opp. at 4–5. According to defendant, plaintiffs' counsel are not entitled to be reimbursed "for attendance and/or participation in meetings, hearings, and correspondences related to a juvenile court proceeding completely unrelated to this IDEA action." *Id.* at 4. Plaintiffs counter that the entries

11. Ms. Hassan's review of the IEP meeting notes on April 23, 2014, last one hour; Mr. Polo's review on April 24, 2014, last .83 hours. Pl.'s Supp. Memo., Exh. 2, at 7.

at issue related to K.C.'s "open criminal case" and should be compensable under the IDEA because "[i]nformation concerning the legal status of the student is relevant to deciding whether and how to proceed with the student's special education litigation." Pl.'s Opp. at 4.

The IDEA provides that prevailing parties may recover their attorney's fees and costs "in any action or proceeding brought under this section." 20 U.S.C. § 1415(i)(3)(D). Plainly, K.C.'s juvenile court proceeding was not an "action or proceeding brought under" the IDEA. It would thus be inappropriate to compensate plaintiffs' counsel, through the IDEA, for their representation of K.C. in the juvenile proceeding. But plaintiffs' counsel confirm that they were not, in fact, representing K.C. in those proceedings. Pl.'s Opp., Exh. 1, at 2–3. Rather, Ms. Hassan was present for those proceedings because they "provided [her] with a better understanding of the [K.C.'s] behavioral and emotional needs" and "[i]nformation concerning [K.C.'s] legal status ... [was] relevant to deciding whether and how to proceed with the student's special education litigation." *Id.;* Pl.'s Opp. at 4. Indeed, as plaintiffs' counsel point out, K.C.'s Probation Officer was ultimately a witness in the IDEA administrative hearing. *See* HOD at 2, 13. While it is clear from the record regarding K.C.'s behavioral problems and illegal activity in school that the juvenile court proceedings are related to his IDEA proceedings, the issue is whether any of the time spent by Ms. Hassan "following" K.C.'s juvenile court proceedings should be reimbursed.

In an unreported decision from the District of Connecticut, the District Court declined to reimburse plaintiff for fees incurred by her attorney's *representation* of plaintiff's daughter in juvenile court. *See L.C. v. Waterbury Bd. of Ed.,* No. 300–

CIV–580, 2002 WL 519715, at *6 (D.Conn. Mar. 21, 2002). Although counsel in that case argued that her participation in the juvenile court proceedings was related to the IDEA proceedings because the juvenile court had committed the minor to the hospital "out of concern for her treatment and education programs," the District Court found that plaintiff had not "adduced sufficient evidence to create a genuine issue of material fact that the fees related to the Juvenile Court proceedings were sufficiently connected to the due process hearings." *Id.* The District Court noted, however, that there was a split of authority within its own district on the issue. *Id.* It cited to two unpublished decisions,[12] one where the court rejected an IDEA plaintiff's claim that fees expended for services related to juvenile court proceedings should be awarded, and one awarding such fees to an IDEA plaintiff "where the events giving rise to the proceedings occurred as a result of the child's behavioral problems at school." *Id.*

It is the Court's recommendation that a middle ground is appropriate here with regard to K.C.'s juvenile proceeding. The Court agrees with the *Waterbury* decision that an IDEA fee petition is not the appropriate vehicle for counsel to seek compensation for representation of a minor in a related juvenile court action. According to plaintiffs' counsel, however, that was not the case here. They are not seeking fees for representing K.C. in the juvenile proceeding, but for the time they spent keeping abreast of developments in the juvenile proceeding. Nevertheless, while the Court agrees that it was important for plaintiffs' counsel to be aware of K.C.'s legal status and developments in that proceeding in order to represent K.C. effectively in the IDEA matter, counsel's knowledge of the juvenile proceeding

---

12. Neither decision is available through PACER or court reporting services.

should have been obtained in a more efficient manner than was done here, and need not have been obtained through first-hand observation of the juvenile hearings. Rather than attend those hearings, plaintiffs' counsel could have easily spoken to K.C.'s defense attorney following the hearings to obtain any information necessary for their representation of K.C. in this matter. Accordingly, the Court recommends compensating plaintiffs' counsel for time they spent receiving updates from Ms. Tillman or K.C.'s defense attorney about the status of the juvenile proceedings,[13] but not for the following entries, which reflect time spent by plaintiffs' counsel attending, or preparing for, the juvenile court hearings:

| Date of Service | Attorney | Description of Legal Services | Hours Claimed | Recommended Hours Compensated |
|---|---|---|---|---|
| 2/20/14 | AP | Attended court hearing for the student in an effort to have the student released from custody. Time includes, conference and discussion with the legal guardian, defense attorney and social worker and actual participation in the hearing. | 2.00 | 0 |
| 5/19/14 | KH | Reviewed file in preparation for Juvenile hearing; attended the juvenile hearing. | 2.5 | 0 |

Similarly, for the following three entries, the Court recommends compensation for half the time sought by plaintiffs' attorneys because the entries indicate that counsel spent time on both compensable IDEA-related tasks and non-compensable, juvenile court-related tasks.

13. Those entries for which the Court recommends reimbursement are: (1) 1/9/14 phone call from Ms. Tillman to Mr. Polo for .33 hours; (2) 2/19/14 phone call from Ms. Tillman to Mr. Polo for .17 hours; (3) 2/19/14 phone call from Mr. Brooks to Mr. Polo for .33 hours; (4) 2/25/14 phone call from Ms. Tillman to Mr. Polo for .33 hours; (5) 2/25/14 email from Brooks to Mr. Polo for .17 hours; (6) 2/27/14 email from Ms. Pope to Mr. Polo for .17 hours; (7) 3/19/14 email from Pope to Mr. Polo for .17 hours; (8) 3/27/14 email from Ms. Teel to K.C.'s Probation Officer for .67 hours; (9) 4/4/14 phone call from Mr. Jordan to Mr. Polo for .17 hours; and (10) 5/13/14 phone call from K.C.'s Probation Officer to Ms. Hassan for .50 hours.

| Date of Service | Attorney | Description of Legal Services | Hours Claimed | Recommended Hours Compensated |
|---|---|---|---|---|
| 4/14/14 | KH | Attended and participated in the family plan meeting. Attendance [sic] at the meeting were: Cassandra Tillman, the student's grandmother; Monae Davis, attorney with the public defender[']s office, DC probation officer and [ ], the student. We discussed the student's complete educational and behavior needs and planned the next step in the case. | 2.33 | 1.17 |
| 6/18/14 | KH | Phone call from Probation Officer, attended family plan meeting via phone. | 1.33 | .67 |
| 7/1/14 | KH | Reviewed file and attended juvenile hearing for student; discussed education issues with probation officer and social worker who will both testify at the student's due process hearing. | 2.33 | 1.17 |

## IV.  CONCLUSION

For the reasons stated above, the Court recommends that both plaintiffs' and defendant's motions for summary judgment be **GRANTED IN PART** and **DENIED IN PART**. Consistent with the foregoing analysis, the Court recommends that plaintiffs' counsel be awarded total fees and costs as follows:

| Attorney's Fees | Costs[14] | Total |
|---|---|---|
| $38,166.35 | $186.96 | $38,353.31 |

A detailed itemization of the fees and costs claimed by plaintiffs' counsel, and allowed by the undersigned consistent with this Report and Recommendation, is attached as an appendix.

Failure to file timely objections to the findings and recommendations set forth in this Report and Recommendation may waive your right of appeal from an order of the District Court adopting such findings and recommendations. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).