**Tiffani TAYLOR, as Parent/Guardian of D.T., Plaintiff,**

v.

**DISTRICT OF COLUMBIA, Defendant.**

**Civil Action No. 15-685 (RBW/AK)**

United States District Court, District of Columbia.

Signed 04/25/2016

Charles Anthony Moran, Moran & Associates, Washington, DC, for Plaintiff.

Laura George, Veronica A. Porter, Office of the Attorney General for the District of Columbia, Washington, DC, for Defendant.

## REPORT AND RECOMMENDATION

### ALAN KAY, UNITED STATES MAGISTRATE JUDGE

This case was referred to the undersigned, on October 27, 2015, for a Report and Recommendation. (10/27/15 Minute Order.) Pending before the undersigned is Plaintiff's Motion for Attorney's Fees ("Motion") [7] and Memorandum in Support thereof ("Memorandum") [7-1]; Defendant's Opposition to Motion ("Opposition") [9]; and Plaintiff's Reply to the Opposition ("Reply") [10]. Plaintiff Tiffani Taylor ("Plaintiff") requests from Defendant District of Columbia ("Defendant" or "the District") a total of $102,536.60 in attorneys' fees and costs [1] incurred in connection with an administrative proceeding brought pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* (Memorandum at 11.)[2] The underlying administrative case involved two separate administrative complaints—Administrative

---

1. Plaintiff's counsel originally billed $104,697.60; however, Plaintiff reduced the fee by $2,161.00 after reviewing the bill. (Memorandum at 11, n.5.)

2. The page numbers referenced are ECF [Electronic Case Filing] system page numbers located at the top right corner of the page. The exhibit numbers referenced herein have also been designated through the ECF system.

Complaints Case #2014-0233 and #2014-0192—which were combined into one administrative hearing. (Hearing Officer Determination, Case #2014-0233 [7-3] ("HOD 1") and Hearing Officer Determination, Case #2014-0192 [7-4] ("HOD 2").) Defendant acknowledges that Plaintiff is a fully prevailing party in Case number #2014-0233 because she was awarded the full relief sought.[3] (Opposition at 2.) Defendant asserts that Plaintiff is a partially prevailing party with regard to Case #2014-0192 because she only prevailed on half of the issues presented therein. (Opposition at 2, 14–15.) Defendant generally contests the hourly billing rate utilized by the Plaintiff's counsel (Opposition at 4-14); counsel's claimed reimbursement rate for the performance of "clerical tasks," (Opposition at 15-16); the award of any fees relating to certain "vague entries," (Opposition at 16-17); and the rate charged for copies (Opposition at 17). Upon consideration of the Motion, Opposition, and Reply, and for reasons set forth herein, the undersigned recommends that Plaintiff's Motion [7] be granted in part and denied in part.

## I. BACKGROUND

Plaintiff Tiffani Taylor is the mother of D.T. (hereinafter referred to as "D.T." or "the student"), a minor child who is a student with a disability. (Memorandum at 1.) Defendant District of Columbia is a municipal corporation that operates the District of Columbia Public Schools System ("DCPS"). (Complaint [1] ¶ 7.)[4] The District receives federal funds pursuant to the IDEA and it is obliged to comply with the IDEA, which guarantees all children with disabilities a free appropriate public education ("FAPE"), 20 U.S.C. § 1400(d)(1)(A); 20 U.S.C. § 1411. In general, FAPE "is available to all children with disabilities residing in the State between the ages of 3 and 21[.]" 20 U.S.C. § 1412(a)(1)(A).

By way of background, at the time of the administrative proceeding, D.T. was a seventeen-year-old child "with a disability pursuant to IDEA, with a disability classification of multiple disabilities including other health impairment ("OHI") for Attention Deficit Hyperactivity Disorder ("ADHD") and emotional disturbance ("ED")." (HOD 1 at 2; HOD 2 at 4.) Prior to the administrative hearing, the student was attending School A, "a self-contained full-time special education program housed in a DCPS high school." (HOD 1 at 4.)

In Administrative Complaint Case #2014-0233, the Hearing Officer considered whether DCPS denied D.T. a FAPE by: 1) failing to conclude at the April 3, 2014 Manifestation Determination Review ("MDR") that the student's behavior on March 31, 2014, that led to his forty-five-day suspension, was a manifestation of his disability; and (2) failing to conclude at the May 16, 2014 MDR that the student's behavior on May 14, 2014, that led to his nine-day suspension, was a manifestation of his disability. (HOD 1 at 4.)

The Hearing Officer concluded that D.T.'s March 31, 2014 behavior of engaging in physical aggression was a manifestation of his ED disability and that he was inappropriately suspended from school. (HOD 1 at 11.) On March 31, 2014, according to D.T., he was in the cafeteria during

---

3. "The case began as one complaint but a part of it was withdrawn and refiled at the Hearing Officer's urging, necessitating two Hearing Officer Determinations ("HODs"). The hearing, work, and relief obtained over-lapped, hence the filing of one fee request for both HODs." (Complaint [1] ¶ 10.)

4. References to Defendant District of Columbia herein include DCPS, the Respondent during the administrative process.

lunchtime when another student spat on him. (HOD 1 at 6.) D.T. left the cafeteria because he was embarrassed, but was directed back to the cafeteria by a school aide. (*Id.*) When D.T. returned to the cafeteria, he "found the student who had spit on him and put him in a cho[ke]hold while the student was hit by another student." (*Id.*) The Hearing Officer found that DCPS failed to "refute the logical conclusion that D.T.'s behavior of engaging in physical aggression was not a behavior that was being targeted by his IEP and BIP." (HOD 1 at 11.) The Hearing Officer concluded that D.T.'s "behavior of engaging in physical aggression even though it did not directly follow in time [with] him being spit [on], was nonetheless a manifestation of his disability." (*Id.*)

The Hearing Officer concluded that D.T.'s May 14, 2014 behavior of engaging in physical aggression was also a manifestation of his ED disability and that D.T. had been inappropriately suspended from school. (HOD 1 at 11.) D.T. indicated that, prior to the incident, he became upset with a female student when she greeted everyone except for him. (HOD 1 at 8.) D.T. calmed down and after some time passed, asked to be allowed to leave to use the restroom. (*Id.*) A school staff member refused D.T.'s request because he believed that D.T.'s true intention was to go after the female student who had ignored him earlier. (*Id.*) D.T. pushed past the school staff member after being repeatedly denied access to the restroom. (*Id.* at 8.) D.T. and Plaintiff provided credible evidence that D.T. was angered by the repeated denial of access to the restroom by school staff members. (*Id.*) Again, the Hearing Officer found that DCPS failed to produce evidence that "refute[d] the logical conclusion that [D.T.'s] behavior of engaging in verbal and physical aggression was not a behavior that was being targeted by his IEP and his BIP." (*Id.* at 11.)

In Administrative Complaint Case #2014-0233, the Hearing Officer ordered DCPS to provide compensatory education for the time that D.T. was inappropriately suspended and provided with no appropriate placement. (*Id* at 13.) The compensatory education award consisted of thirty hours of independent tutoring and fifteen hours of independent counseling or mentoring. (HOD 1 at 13.) "Despite Petitioner's failure to propose appropriate compensatory services[,] [the Hearing Officer] conclude[d] that to award the student no compensation for the missed services would be inequitable and . . . the student should be awarded at least nominal services as compensation." (HOD 1 at 12-13.)

In Administrative Complaint Case #2014-0192, the Hearing Officer considered four issues; namely, whether DCPS denied D.T. a FAPE by failing to provide: (1) timely and accurate evaluations/re-evaluations for D.T.'s areas of suspected disabilities; (2) an appropriate IEP because D.T.'s IEP did not prescribe (a) a full time IEP for ED, other health impaired and learning disability, (b) related services that will provide therapeutic transport, counseling . . . and therapeutic recreation, and (c) wraparound services; (3) an appropriate placement and location of services; and (4) D.T.'s educational records to his parents, including his cumulative special education file noting suspensions and incident reports. (HOD 2 at 3.) These four issues are addressed in turn.

First, Plaintiff claimed that DCPS failed to provide timely and accurate evaluations or reevaluations for D.T. (*Id.* at 11.) However, D.T.'s November 6, 2013 IEP contained references to recent evaluations, which were reviewed by a DCPS psychologist and then by an IEP team. (*Id.*) The IEP team made appropriate adjustments to D.T.'s IEP. (*Id.*) Accordingly, the Hearing Officer concluded that Plaintiff did not

meet her burden of proof that DCPS failed to re-evaluate D.T. (*Id.*)

Second, Plaintiff alleged that from September 2012 to March 2013, DCPS failed to provide D.T. with an appropriate IEP at School A. (HOD 2 at 11.) When D.T. attended School A, he was erroneously placed in a general education program with an IEP that prescribed thirteen hours of specialized instruction inside general education. (HOD 2 at 4, 12.) By February 2013, D.T. had not made any progress on his math goals and his reading goals had yet to be implemented. (HOD 2 at 4.) On March 19, 2013, to improve D.T.'s progress, D.T.'s IEP was amended to provide 25 hours of services per week outside general education and placement in a self-contained full-time special education program at School A. (HOD 2 at 5.) Accordingly, the Hearing Officer found that D.T.'s IEP from September 2012 to March 2013 was inappropriate. (HOD 2 at 11.)

The Hearing Officer was not, however, convinced that D.T. would benefit from "wraparound" services in his IEP compared to a living in a stable home environment with adequate supervision.[5] (HOD 2 at 12.) Great weight was given to D.T.'s probation officer's testimony due to the probation officer's years of experience with D.T. in monitoring his compliance. (*Id.*) Thus, the Hearing Officer concluded that D.T.'s IEP was not inappropriate because it lacked therapeutic transport to school, outside counseling, therapeutic recreation, or "wrap-around" services. (*Id.*)

Third, Plaintiff asserted that placement in School A denied him a FAPE because

School A was an inappropriate location of services. (HOD 2 at 12.) Although School A provided a full-time special education program for students with emotional and behavioral concerns, the student's education consultant indicated that:

> the student's current placement in School A is inappropriate because the student has failed academically there and among other things School A lacks sufficient behavioral supports and interventions to help address the student's severe emotional and behavioral needs; in addition[,] in her opinion[,] School A uses suspensions as a primary means of addressing the student's behavior.

(*Id.* at 8.) The Hearing Officer determined that School C was an appropriate educational placement for D.T.[6] and further that, School A had not and could not provide D.T. an appropriate placement. (*Id.* at 13.)

Finally, Plaintiff argued that DCPS denied D.T. a FAPE by failing to provide Plaintiff with the student's records, including his cumulative and special education file with suspensions and incident reports, as requested on April 2, 2014. (HOD 2 at 13.) The Hearing Officer determined that Plaintiff's disclosure and use of documents in this hearing was evidence Plaintiff was provided with the student's educational records. (*Id.*)

Accordingly, Plaintiff prevailed on two of the four issues presented in Administrative Complaint Case #2014-0192 and was awarded some of the relief sought. (*Id.* at 14-15.) The Hearing Officer concluded that Plaintiff proved that the D.T.'s location of

---

**5.** D.T.'s school attendance was at its best during SY 2012-2013 when he was in a group home because the group home staff escorted him to school. (HOD 2 at 5.)

**6.** School C is a special education day school serving students with special needs including students with ED classifications. (HOD at 9.)

There are two behavioral staff assigned to each room and four social workers including a social work director. (*Id.*) Each school level has a quiet room and suspension is only employed as a last resort for discipline. (*Id.*) School C's teachers are certified in special education and the related service providers are licensed. (*Id.*)

services was inappropriate and that D.T.'s IEP from September 2012 to March 2013 was inappropriate. (*Id.* at 11–13.) The Hearing Officer also concluded that Plaintiff failed to prove that: (1) D.T.'s current IEP was inappropriate, (2) DCPS failed to evaluate D.T., and (3) DCPS did not provide D.T.'s educational records to the parents. (*Id.*) The Hearing Officer determined that the student was harmed by not having an appropriate IEP from September 2012 through March 2013, but there was insufficient evidence as to the "extent of harm" and what "remedy would effective[ly] rectify it." (HOD 2 at 14.) Because the evidence "did not support" a specific amount of services, the Hearing Officer awarded Plaintiff "nominal" services; *i.e.*, compensatory education in the form of thirty hours of independent tutoring and fifteen hours of counseling or mentoring. (*Id.* at 14.) The Hearing Officer concluded "that to award the student no compensation for the missed services would be inequitable and therefore [he] conclude[d] that the student should be awarded at least nominal services as compensation." (*Id.*) The Hearing Officer declined to award the wrap-around services requested by Plaintiff. (HOD 2 at 12.) DCPS was ordered to place and fund D.T. at the Phillips School and to provide transportation services for SY 2014-2015. (HOD 2 at 14.)

## II. ANALYSIS

### A. Prevailing Party Status

■ The IDEA gives courts authority to award reasonable attorney's fees to the parents of a child with a disability who is the "prevailing party." 20 U.S.C. § 1415(i)(3)(B). Thus, the court must initially determine whether the party seeking attorney's fees is the prevailing party. *See Jackson v. District of Columbia*, 696 F.Supp.2d 97, 101 (D.D.C.2010); *District of Columbia v. West*, 699 F.Supp.2d 273, 278 (D.D.C.2010) (In considering a claim for

IDEA attorney's fees, it is the court "not the hearing officer in the administrative proceeding, which determines prevailing party status. . . .") (quoting *District of Columbia v. Straus*, 607 F.Supp.2d 180, 183 (D.D.C.2009)).

■ The Supreme Court has indicated that the term "prevailing party" only includes plaintiffs who "secure a judgment on the merits or a court-ordered consent decree." *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Resources*, 532 U.S. 598, 600, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). The Supreme Court therefore rejected the "catalyst theory" whereby a plaintiff would be a prevailing party if the lawsuit brought about the desired result through a voluntary change in the defendant's conduct. *Id.* at 605, 121 S.Ct. 1835. The Supreme Court instead determined that a prevailing party must obtain a "material alteration of the legal relationship of the parties." *Id.* at 604, 121 S.Ct. 1835 (quoting *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792–93, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989)). The *Buckhannon* standards apply to IDEA administrative hearings even though the relief granted is administrative as opposed to judicial. *Abarca v. District of Columbia*, No. 06–cv–1254, 2007 WL 1794101, *2 n. 1 (D.D.C. June 19, 2007).

■ A party is generally considered to be the prevailing party if he succeeds "on any significant issue in litigation which achieves some of the benefit [ ] sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir.1978)). "[T]he term prevailing party [is] a legal term of art that requires more than achieving the desired outcome; the party seeking fees must also have been awarded some relief by the court." *District of Columbia v.*

*Straus*, 590 F.3d 898, 901 (D.C.Cir.2010) (internal quotations and citations omitted). In *Straus*, the Court of Appeals considered the following three factors to determine prevailing party status: (1) alteration of the legal relationship between the parties; (2) a favorable judgment for the party requesting fees; and (3) a judicial pronouncement accompanied by judicial relief. *Id.* at 901.

Defendant concedes that that Plaintiff is a fully prevailing party in Administrative Complaint Case #2014-0233. (Opposition at 2.) However, Defendant argues that Plaintiff is a partially prevailing party in Administrative Complaint Case #2014-0192 because Plaintiff only succeeded on two of the four issues presented therein. (Opposition at 2, 14–15.) In Administrative Complaint Case #2014-0192, Plaintiff's underlying complaint asserted that DCPS denied the student a FAPE by failing to provide timely and accurate evaluations, an appropriate IEP, an appropriate placement and location of services, and educational records. (*See* HOD 2 at 2.) While the Hearing Officer found that Plaintiff did not meet her burden of proof to establish that DCPS failed to perform evaluations or denied Plaintiff access to records, which impeded the student's right to a FAPE, he did determine that DCPS denied the student a FAPE by failing to provide an appropriate IEP and placement and location of services. (HOD 2 at 14.) The Hearing Officer awarded Plaintiff compensatory education in the form of thirty hours of independent tutoring and fifteen hours of independent counseling or mentoring, placement in a private school, and transportation services. (HOD 2 at 14-15.)

■ "The essential test for prevailing party status is whether a party successfully obtains a 'material alternation of the

legal relationship of the parties' with the imprimatur of an adjudication." *Buckhannon*, 532 U.S. at 604, 121 S.Ct. 1835. Defendant in this case argues that this showing was not made where the Hearing Officer did not find a denial of FAPE due to Defendant's failure to evaluate or provide records and thus, the amount of attorney's fees should be reduced accordingly. (Opposition at 14-15 (citing *Wilhite v. District of Columbia*, 110 F.Supp.3d 77, 91 (D.D.C.2015) (reducing 75% *Laffey* Matrix fee award by 10% due to partially prevailing party status))). Plaintiff argues that a reduction in the amount of fees is unwarranted because "the issues on which she did not prevail were procedural in nature and could not have [resulted in an] award[ ] [of] similar substantial relief." (Reply at 8.) Plaintiff asserts that "the most critical factor in determining an appropriate fee award is the degree of success obtained." (Reply at 8 (citing *Hensley*, 461 U.S. at 436, 103 S.Ct. 1933)). Plaintiff contends that although she failed to prevail on every issue alleged, the award granted was substantial; *i.e.*, sixty hours of tutoring, thirty hours of counseling and placement in a private school. (Reply at 8.)[7]

■ The undersigned finds that while Plaintiff's failure to prevail on issues that were procedural in nature may not warrant a reduction in fees, Plaintiff's failure to obtain part of the relief she requested does warrant a reduction in fees. The Hearing Officer concluded that D.T. was harmed by having an inappropriate IEP from September 2012 to March 2013, but Plaintiff did not prove that the student's then-current IEP was inappropriate nor did she specify what remedy would effectively rectify the harm. (HOD 2 at 14.) The Hearing Officer accordingly awarded D.T.

---

7. The referenced by Plaintiff pertains to the consolidated relief granted in both HODs, not just HOD 2.

full-time placement in a private school, and thirty hours of independent tutoring, and fifteen hours of independent counseling or mentoring, because not doing so would be "inequitable." (*Id.*) Plaintiff failed to obtain "wrap around" services and services in the form of therapeutic transport, outside counseling, and therapeutic recreation. (HOD 2 at 12, 15.) "The Court's inquiry is not simply whether Plaintiff obtained 'significant relief,' but rather, whether the relief, however significant, is limited in comparison to the scope of the proceeding as a whole." *Platt v. District of Columbia*, No. 14–cv–1173 (CKK), 168 F.Supp.3d 253, 264, 2016 WL 912171, at *8 (D.D.C. Mar. 7, 2016) (citing *Hensley*, 461 U.S. at 440, 103 S.Ct. 1933).

Plaintiff prevailed on the most significant aspects of her claims but her relief was limited in comparison to the proceeding as a whole; thus, the undersigned finds that full compensation for all of the work performed by Plaintiff's counsel would be disproportionate to the degree of success achieved. The undersigned finds that a reduction in the amount of 10% is reasonable in light of the factors discussed above. *See Platt*, 168 F.Supp.3d at 263–65, 2016 WL 912171, at *8–9 (reducing the fee award by 15% for failing to prevail on five out of eight issues and failing to obtain certain relief sought, such as placement at a certain school and "wrap around" services); *see also Brown v. District of Columbia*, 80 F.Supp.3d 90, 101 (D.D.C.2015) ("Given that plaintiff prevailed on the most important aspects of his claims and the *de minimus* nature of his procedural loss, the Court will exercise its broad discretion to reduce the total fees awarded for [counsel] and her paralegal by 10% for partial success. . . .")

## B. Determining a Reasonable Fee

In cases where the plaintiff has been determined to be a prevailing party, the court "in its discretion, may award reasonable attorneys' fees." 20 U.S.C. § 1415(i)(3)(B)(i)(I). An award of fees in an IDEA case "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C). The plaintiff has the burden of establishing the reasonableness of any fee requests. *Jackson v. District of Columbia*, 696 F.Supp.2d 97, 101 (D.D.C.2010). An award of attorneys' fees is calculated by multiplying the "reasonable hourly rate" by the "number of hours reasonably expended on the litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)); *see also Blum v. Stenson*, 465 U.S. 886, 888, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). The issues regarding the reasonableness of Plaintiff's hourly rates and the number of hours reasonably expended by Plaintiff will be addressed in turn.

## 1. The Reasonableness of Plaintiff's Hourly Rates

The IDEA states that "[f]ees awarded under this paragraph shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C). "Whether an hourly rate is reasonable turns on three sub-elements: (1) the attorney's billing practices, (2) an attorney's skill, experience and reputation and (3) the prevailing market rates in the relevant community." *Eley v. Dist. of Columbia*, 793 F.3d 97, 100 (D.C.Cir.2015) (citing *Covington v. Dist. of Columbia*, 57 F.3d 1101, 1107 (D.C.Cir. 1995)) (quotations omitted). The District only contests the third sub-element regarding whether Plaintiff's proposed hourly rate reflects the prevailing market rates in the community for IDEA litigation. (Opposition at 4-14.) The District further challenges counsel's billing practices relating to clerical/administrative work. (Opposition at 15-16.)

### a. The Prevailing Market Rate for IDEA Litigation

 The determination of a "'market rate' for the services of a lawyer 'is inherently difficult" and is decided by the court in its discretion. *Blum*, 465 U.S. at 896 n. 11, 104 S.Ct. 1541. "To inform and assist the court ..., the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested [hourly] rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.*; *Eley*, 793 F.3d at 100; *see also Covington*, 57 F.3d at 1107 ("[A] fee applicant bears the burden of establishing entitlement to an award, documenting the appropriate hours, and justifying the reasonableness of rates.")

 Fee applicants may "submit attorneys' fee matrices as one type of evidence that provides a useful starting point in calculating the prevailing market rate" for attorneys' services. *Eley*, 793 F.3d at 100 (internal quotations omitted). The "most commonly used fee matrix is the '*Laffey* matrix.'" *Id.* By its own terms, the *Laffey* Matrix rates are the presumptive *maximum* rates for litigators who practice complex federal litigation in the District of Columbia. *See Laffey v. Northwest Airlines, Inc.*, 572 F.Supp. 354, 374 (D.D.C. 1983) *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C.Cir.1984); *Heller v. D.C.*, 832 F.Supp.2d 32, 40 (D.D.C.2011). Because the *Laffey* Matrix was created over thirty years ago, two variations of the *Laffey* Matrix have been created to adjust for inflation.

The first *Laffey* Matrix ("USAO *Laffey*") is calculated by the United States Attorney's Office for the District of Columbia ("USAO"). In essence, the USAO used the original 1980-1981 *Laffey* rates from *Laffey v. Northwest Airlines* as a starting point. The United States Attorney's Office for the District of Columbia updates the Matrix annually to reflect increases in the local Consumer Price Index ("CPI") which reflects the change in the cost of living in the Washington, D.C. area.[8] *Eley*, 793 F.3d at 101; *see also Rooths v. District of Columbia*, 802 F.Supp.2d 56, 61 (D.D.C.2011). The second *Laffey* Matrix ("LSI *Laffey*") is calculated using the "legal services component of the CPI rather than the general CPI...." *Heller*, 832 F.Supp.2d at 40. Because the cost of legal services across the nation has risen much faster than the overall prices in the District of Columbia, the rates set out in the LSI *Laffey* Matrix are higher than the rates in the USAO *Laffey* Matrix.

Plaintiff contends that the record in this case establishes that the rate requested by Plaintiff's counsel—equivalent to the USAO *Laffey* Matrix Rate—is in line with the prevailing rates in the community for similar services by lawyers of reasonably comparable skills, experience, and reputation. (*See generally* Memorandum at 6–10; 2003-2014 USAO *Laffey* Matrix [7-7].) As such, Plaintiff seeks reimbursement for her attorney, Mr. Bergeron, at an hourly rate of $510.00/hour. (Billing Statement [7-6].)[9]

---

**8.** The USAO *Laffey* Matrix for 2003-2014 is available at http://www.justice.gov/sites/default/files/usao-dc/legacy/2013/09/09/Laffey_Matrix%202014.pdf. The USAO *Laffey* rates for 2014-15 are available at http://www.justice.gov/sites/default/files/usao-dc/legacy/2014/07/14/Laffey%20Matrix_2014-2015.pdf. The USAO *Laffey* rates for 2015-16 are available at https://www.justice.gov/usao-dc/file/796471/download.

**9.** The hourly rate set forth in the USAO Laffey Matrix for June 1, 2013 through May 31, 2014, for attorneys with twenty plus years of experience is $510.00. The hourly rate for paralegals and law clerks is $145.00. The

 While fee matrices can be used as evidence in calculating the prevailing market rate, *Covington*, 57 F.3d at 1109, the *Eley* court made clear that a court may not begin its analysis from the premise that "some version of the *Laffey* matrix is presumptively reasonable" because "this reasoning flips the burden of persuasion on its head." *Eley*, 793 F.3d at 105. Rather, the burden can only be satisfied by a plaintiff's submission of evidence that counsel's requested rates are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Covington v. District of Columbia*, 57 F.3d at 1109 (citing *Blum*, 465 U.S. at 896 n. 11, 104 S.Ct. 1541.) A plaintiff seeking full USAO *Laffey* rates further bears the burden of establishing that their IDEA case qualifies as complex federal litigation for which *Laffey* matrices are appropriate. *Eley*, 793 F.3d at 105; *see also Reed v. District of Columbia*, 134 F.Supp.3d 122, 128–29 (D.D.C.2015).

 To demonstrate the prevailing market rate, a fee applicant may supplement fee matrices with other evidence including "surveys to update them; affidavits reciting the precise fees that attorneys with similar qualifications have received from fee-paying clients in comparable cases; and evidence of recent fees awarded by the courts or through settlement to attorneys with comparable qualifications handling similar cases." *Eley*, 793 F.3d at 101 (quoting *Covington*, 839 F.Supp. 894, 899 (D.D.C.1993) (emphasis omitted); *see also Covington*, 57 F.3d at 1113 ("A statistically reliable, well-documented, and extensive survey of the rates clients pay for a certain sub-market of legal services would be powerfully persuasive.")

 Plaintiff in the instant case attempts to demonstrate that the USAO *Laffey* Matrix rate is in line with the prevailing market rates in the community for similar services by lawyers of reasonably comparable skill, experience and reputation through the submission of declarations from several attorneys practicing in the District of Columbia. (*See* Bergeron Decl. [7-8]; Houck Decl. [7-9]; Jester Decl. [7-10]; Read Decl. [7-11]; Tyrka Decl. [7-12]; Ostrem Decl. [7-13]; Hill Decl. [7-14]; Savit Decl. [7-15]; Hecht Decl. [7-16]; Mendoza Decl. [7-17]). As a preliminary matter, the undersigned notes that the *Laffey* Matrix was created for complex federal litigation and it contains presumptive maximum rates. *Eley*, 793 F.3d at 105. In this case, several attorneys state that they find IDEA litigation to be at least as complex as their work in other areas of law such as Title VII employment discrimination work, class action defense, wrongful death, and personal injury. (Hill Decl. [7-14] at 1-2; Savit Decl. [7-15] at 1-2; Hecht Decl. [7-16] at 2; Mendoza Decl. [7-17] at 1.) Although the undersigned acknowledges that complex federal litigation can include Title VII employment litigation, *see Laffey, supra.*, as well as Section 1983 civil rights litigation and antitrust cases, *see Blum*, 465 U.S. at 893–94, 104 S.Ct. 1541, the undersigned is not persuaded that IDEA litigation is sufficiently complex to warrant full USAO *Laffey* rates.

 In fact, Plaintiff's declarations show how dissimilar IDEA cases are from complex federal litigation. Unlike complex federal litigation which involves pretrial exchange and extensive discovery, "[t]here is very limited discovery and pretrial exchange between the parties in IDEA cases." ( Hill Decl. [7-14] at 1-2; Savit Decl.

hourly rates set forth in the USAO *Laffey* Matrix for June 1, 2014 through May 31, 2015, for attorneys with twenty plus years of

experience is $520.00. The hourly rate for paralegals and law clerks is set at $150.00.

 at 2–3; Hecht Decl. [7-16] at 2-3; Mendoza Decl. [7-17] at 1-2); *see also Reed v. District of Columbia*, 134 F.Supp.3d 122, 130 (D.D.C.2015) ("[W]hile the lack of formal discovery in IDEA matters may perhaps necessitate hours of hearing preparation, that preparation is different in kind from the preparation required for complex federal litigation which involves depositions, interrogatories, requests for production, motions to strike and the like.") The undersigned recognizes that IDEA cases can be complicated and challenging, however, they do not rise to the level of complexity that would demand a fee award of full USAO *Laffey* rates. *See Reed*, 134 F.Supp.3d at 130.

Nor do the attorney declarations submitted by Plaintiff establish the USAO *Laffey* rate as reasonable when applied to IDEA litigation. *See Platt v. District of Columbia*, Civil Action No. 14–1173 (CKK), 168 F.Supp.3d 253, 266, 2016 WL 912171, at *10 (D.D.C. March 7, 2016) (where the court commented that the Jester and Read declarations demonstrate that the reasonable rate for IDEA litigation is "well below the *Laffey* rate"). [10] *See* Jester Decl. [7-10] at 5 (noting that the rates she charges are "current market rates, or below current market rates"); *see also Garvin v. District of Columbia*, 851 F.Supp.2d 101, 107 (D.D.C.2012) (approving billing rates of $400–$450 per hour where the relevant *Laffey* rates were $465–$475 per hour); *Cox v. District of Columbia*, 754 F.Supp.2d 66, 75 (D.D.C.2010) (approving a billing rate of $400 per hour where the relevant *Laffey* rate was $465 per hour.) In these two cases cited by Ms. Jester in support of prevailing market rates, the adjudicating court determined that her billing rate was reasonable "precisely because the rate was below, not equal to, the *Laffey* rate." *Platt*, 168 F.Supp.3d at 266, 2016 WL 912171, at *10.

Similarly, Ms. Read's reliance on *Blackman v. District of Columbia*, 56 F.Supp.3d 19 (D.D.C.2014) to establish *Laffey* rates as prevailing market rates is not persuasive. In her Declaration, Ms. Read indicates that she charged, and was awarded, the *Laffey* rate for her involvement as lead counsel in this complex class-action case litigated for over a decade in federal court. *See* Read Decl. [7-11] at 1-2. However, the court in *Blackman* found that the *Laffey* rate was reasonable after finding that the case was *not* a routine IDEA matter. *See Blackman*, 56 F.Supp.3d at 29. It was a "complex case" that required a number of "skilled litigators" to "research many novel questions of law under tight time constraints." *Id.*

The remaining declarations do little to convince the undersigned that USAO *Laffey* rates are the prevailing market rates for IDEA litigation by "reciting the precise fees that attorneys with similar qualifications have *received* from fee-paying clients in comparable cases." *Eley*, 793 F.3d at 101 (quoting *Covington*, 57 F.3d at 1109) (emphasis added). For example, although Mr. Bergeron indicates that his 2014 "rate requested" was $510.00, which is consistent with the 2013-2014 USAO *Laffey* rate, he does not cite to a single case in which he received the requested rate. (Bergeron Decl. [7-8].) [11] *See also* Hill Decl. [7-14] at 4 (noting that he requests fees calculated in accordance with the "75% USAO' rate); Savit Decl. [7-15] at 7 (noting that she expects an hourly rate of at least $500/hour, while the undersigned calculates that her thirty years of experi-

---

10. Plaintiff in *Platt* relied on the same affidavits from Ms. Jester and Ms. Read as in this case.

11. He states only that he was "recently awarded fees at these rates from the District Court[.]" (Bergeron Decl. at 2.)

ence would result in a \$520/hour rate under *Laffey*); Hecht Decl. [7-16] at 4 (noting that she has been awarded an hourly rate of at least \$270/hour, while the undersigned calculates that her six years of experience would warrant a \$300/hour rate under *Laffey*).[12] The fact that some IDEA attorneys have *charged* the *Laffey* rate sheds no light on whether those attorneys ever received such rates from their clients who pay fees. Accordingly, the undersigned finds the proffered declarations provide insufficient evidence as to the reasonableness of USAO *Laffey* rates for IDEA litigation.

The D.C. Circuit has even noted that "in the particular context of IDEA claims, there is a submarket in which attorneys' hourly fees are generally lower than the rates in either of the *Laffey* Matrices." *Salazar ex rel. Salazar v. District of Columbia*, 809 F.2d 58, 64 (D.C.Cir.2015) (citing *Eley*, 793 F.3d at 105). Indeed, the majority of judges in this Court have found that the submarket for IDEA litigation approximates 75% of the USAO *Laffey* Matrix.[13] Only in rare cases have judges awarded full USAO *Laffey* rates and those cases typically involved plaintiffs

who established that their administrative proceeding was particularly complex.[14]

Plaintiff further relies on a Statement of Interest ("Statement" [10-1]) by the United States filed in *Eley v. District of Columbia*, Civil Action No. 11–0309 (BAH) (D.D.C.), which was remanded to the District Court. That Statement focuses on distinguishing between USAO *Laffey* Matrix rates and LSI *Laffey* Matrix rates and the *Eley* plaintiff's motion to strike the Statement is currently pending before the District Judge. Accordingly, because the Statement is the subject of a pending motion to strike in an unrelated case and it is mainly concerned with distinguishing between USAO and LSI *Laffey* Matrix rates, the undersigned finds Plaintiff's reliance on the Statement of Interest unwarranted.

For the above reasons, the undersigned ultimately does not believe that Plaintiff has met her burden of establishing that administrative IDEA proceedings constitute "complex federal litigation" for which USAO *Laffey* rates would be appropriate. Nor has the Plaintiff demonstrated "that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably compa-

---

**12.** *See also* Mendoza Decl. [7-17] at 3 (not mentioning an hourly rate but instead relying on the IDEA's fee-shifting provision for payment). Mr. Tyrka and Mr. Ostrem indicate that they match their rates to the LSI *Laffey* rates, which are higher than USAO *Laffey* rates. (Tyrka Decl. [7-12]; Ostrem Decl. [7-13].)

**13.** *See, e.g., Platt,* 168 F.Supp.3d at 265–66, 2016 WL 912171, at *11 (Kollar-Kotelly, J.); *McNeil v. District of Columbia,* No. 14–cv–1981, 2015 WL 9484460, at *6 (D.D.C. Dec. 29, 2015) (Contreras, J.); *Collins v. District of Columbia,* 146 F.Supp.3d 32, 45–46 (D.D.C. 2015) (K. Jackson, J.); *Snead v. District of Columbia,* 139 F.Supp.3d 375, 381 (D.D.C. 2015) (Huvelle, J.); *Roberts v. District of Columbia,* 134 F.Supp.3d 404, 410–11 (D.D.C. 2015) (Robinson, Mag. J.); *Young v. District of Columbia,* 139 F.Supp.3d 15 (D.D.C.2015)

(Robinson, Mag. J.); *Reed,* 134 F.Supp.3d at 132 (Boasberg, J.); *Tillman v. District of Columbia,* 123 F.Supp.3d 49, 57(D.D.C.2015) (Kollar-Kotelly, J.); *Cook v. District of Columbia,* 115 F.Supp.3d 98, 103 (D.D.C.2015) (Kay, Mag. J.) (all awarding 75% of the USAO *Laffey* Matrix for IDEA proceedings).

**14.** *See, e.g., Gaston v. District of Columbia,* No. 14–cv–1249, 2015 WL 5029328, at *5 (D.D.C. Aug. 26, 2015) (Robinson, Mag. J.); *District of Columbia v. Kirksey–Harrington,* 125 F.Supp.3d 4, 16 (D.D.C.2015) (Howell, J.) (all awarding 100% USAO *Laffey* because the cases were particularly complex). *But see Merrick v. District of Columbia,* 134 F.Supp.3d 328 (D.D.C.2015) (A. Jackson, J.) (awarding 100% of the USAO *Laffey* Matrix irrespective of the particular case complexity).

rable skills, experience, and reputation." *Eley*, 793 F.3d at 100 (quoting *Blum*, 465 U.S. at 895 n. 11, 104 S.Ct. 1541). Accordingly, Plaintiff's request for full USAO *Laffey* rates exceeds the prevailing market rate for such work. Such "inflated fee awards are far from harmless." *Price v. Dist. of Columbia*, 792 F.3d 112, 117 (D.C.Cir.2015) (Brown, J., concurring). "[W]hen courts are too generous in awarding fees, they create an incentive for needless conflict and enrich IDEA lawyers at the expense of public schools, and ultimately the very children the IDEA seeks to protect." *Id.* at 118.

The question remains, though, if not *Laffey*, then what rates are appropriate for IDEA litigation? Because the Plaintiff has not argued that this case was particularly complex, the undersigned sees no reason to depart from the majority of recent IDEA cases in this Court that have found 75% of the USAO *Laffey* Matrix to be a reasonable hourly rate. The undersigned thus recommends that the trial judge use his discretion and award 75% of the applicable USAO *Laffey* rate—$382.50/hour for work done prior to June 1, 2014 and $390.00/hour for work on or after June 1, 2014—as a reasonable hourly rate with respect to the instant fee petition.

### b. Hourly Rate for Clerical and Administrative Type Tasks

■ Defendant contends that "[b]ecause Plaintiff's counsel is a sole practitioner, Defendant does not object to Plaintiff being paid for clerical tasks [;] [h]owever, this Court should reduce the amount of the award" to an hourly rate based on a paralegal rate. (Opposition at 16.) Defendant calculates 38.6 hours billed for "clerical duties" but does not specify any charges. (*Id.*) The undersigned agrees

that some of the tasks billed by Plaintiff's counsel are clearly administrative or clerical in nature rather than legal, such as scanning, copying, paginating, faxing, tabulating and filing. (Billing Statement [7-6]).[15] *See In re Olson*, 884 F.2d 1415, 1426–27 (D.C.Cir.1989) (acknowledging that "[s]uch services are generally considered within the overhead component of a lawyer's fee"); *Jackson v. District of Columbia*, 603 F.Supp.2d 92, 98 (D.D.C. 2009), *amended in part by* 696 F.Supp.2d 97 (D.D.C.2010). *But see Bailey v. District of Columbia*, 839 F.Supp. 888, 891 (D.D.C.1993) (wherein the court determined that attorneys operating as solo practitioners should not be denied compensation just because they may lack the resources to retain junior lawyers who could handle such tasks more economically). The *Bailey* case does not however prevent an attorney who is billing for clerical and administrative tasks, which could be handled by a paralegal, from adjusting his fee rates downward with regard to performance of such tasks. *See, e.g., DeLa Cruz v. District of Columbia*, 82 F.Supp.3d 199, 207 (D.D.C.2015) (reducing fee award to account for time spent performing administrative tasks). Accordingly, the undersigned recommends that 14.8 hours spent handling clerical and administrative work should be reimbursed at an hourly rate equivalent to three-quarters of the USAO *Laffey* rate for paralegals, which is $108.75/hour (2013-2014 *Laffey* rate) [for 3.7 hours] and $112.50/hour (2014-2015 *Laffey* rate) [for 11.1 hours].

### c. Hourly Rate for Travel Time

■ Counsel billed 9.9 hours for travel. (Billing Statement [7-6].) "In this

---

15. *See, e.g.,* billing entries for: 04/11/2014— "Scan 200 pages" [0.4] and "Paginate 200 pages of appendix to complaint" [0.2]; 05/06/2014—"Scan motion for records" [0.1];

6/15/2014 "Tabulate exhibits for Hearing Officer" [0.8] and "Tabulate exhibits for my copy" [0.8].

circuit, travel time generally is compensated at no more than half the attorney's appropriate hourly rate." *Blackman v. District of Columbia*, 397 F.Supp.2d 12, 15 (D.D.C.2005) (citing *Cooper v. United States R.R. Ret. Bd.*, 24 F.3d 1414, 1417 (D.C.Cir.1994)); *A.C. ex rel. Clark v. District of Columbia*, 674 F.Supp.2d 149, 159 (D.D.C.2009); *Laster v. District of Columbia*, No. 05–cv–1875, 2006 WL 2085394, at *4 (D.D.C. July 25, 2006). Accordingly, the undersigned recommends that these 9.9 hours be reimbursed at hourly rates equivalent to 50% of the aforementioned hourly rates of $382.50 (2013-2014 *Laffey* rate) and $390.00 (2014-2015 *Laffey* rate), which are $191.25 [for 2.6 hours] and $195.00 [for 7.3 hours], respectively.

### 2. Number of Hours Billed: Are Any Exclusions Warranted

█ Defendant claims that with regard to several fee entries by Plaintiff, totaling 10.3 hours, which are "vague and lack specificity," the court should reduce those fees by a percentage or disallow recovery entirely. (Opposition at 16.) Defendant however specifies only three time entries totaling 1.2 hours: two entries on 4/28/2014 and one entry on 6/14/2014. (Billing Statement [7-6] at 2, 10.) The entries from 4/28/2014 are clearly two charges for travel time, which have already been reduced in the prior section. The entry dated 6/14/2014 states "D.T. sister and mother drove Away-Home"—0.2 [hours]. (Billing Statement [7-6] at 10.) The undersigned recommends that Plaintiff not receive fees for the .2 hours associated with the 6/14/2014 time entry as it is impossible to decipher what that entry means. The remaining time entries on Plaintiff's Billing Statement are detailed enough to permit recovery for the hours billed.

### C. Costs

█ Plaintiff requests reimbursement of $230.60 in costs: $84.60 for mileage (at 58.5 cents/mile); copying 440 pages at $.25 per page totaling $110.00, $24.00 for parking, $7.00 for tabs, and $5.00 for binding. (Billing Statement [7-6].) Defendant contests only the copying costs of $0.25/page, suggesting that $0.15/page is a "more appropriate rate." (Opposition at 17.) *See Johnson v. D.C.*, 850 F.Supp.2d 74, 81–82 (D.D.C.2012); *McClam v. District of Columbia*, 808 F.Supp.2d 184, 190–91 (D.D.C. 2011) (awarding $0.15 per page for reimbursement of copying costs). Accordingly, the undersigned recommends that the following costs be reimbursed: $84.60 for mileage; $24.00 for parking; $7.00 for tabs; $5.00 for binding; and copying charges for the 440 copies at a reduced rate of $.15 per page, which equals $66.00, with all costs totaling $186.60.

### III. RECOMMENDATION

The undersigned recommends that for the reasons stated above, Plaintiff's Motion for Attorney's Fees [7] be granted in part and denied in part. In this case, Plaintiff's counsel, Mr. Bergeron, documented 200.6 hours at $510.00/hour, and costs of $230.60 (Billing Statement [7-6].) The undersigned recommends a reduction in hours and hourly rates as follows:

- Application of billing rate of $382.50/ hour for 51.8 hours spent on legal work, totaling $19,813.50 (according to the 2013-2014 *Laffey* rate)
- Application of billing rate of $108.75/ hour for 3.7 hours spent on paralegal work, totaling $402.38 (according to the 2013-2014 *Laffey* rate)
- Application of billing rate of $191.25/ hour for 2.6 hours of travel time, totaling $497.25 (according to the 2013-2014 *Laffey* rate)
- Application of billing rate of $390.00/ hour for 123.9 hours spent on legal work, totaling $48,321.00 (according to the 2014-2015 *Laffey* rate)

- Application of billing rate of $112.5/ hour for 11.1 hours spent on paralegal work, totaling $1,248.75 (according to the 2014-2015 *Laffey* rate)

- Application of a billing rate of $195.00/ hour for 7.3 hours of travel time, totaling $1,423.50 (according to the 2014-2015 *Laffey* rate)

- Exclusion of .2 hours for vague time recording

- A reduction of 10% overall to account for Plaintiff's partial prevailing party status.

The undersigned thus recommends that Plaintiff Taylor is entitled to attorney's fees totaling $64,535.74 and costs in the amount of $186.60.

## IV. REVIEW BY THE DISTRICT COURT

The parties are hereby advised that under the provisions of Local Rule 72.3(b) of the United States District Court for the District of Columbia, any party who objects to the Report and Recommendation must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the report and/or recommendation to which objection is made, and the basis for such objections. The parties are further advised that failure to file timely objections to the findings and recommendations set forth in this report may waive their right of appeal from an order of the District Court that adopts such findings and recommendation. *See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).